**FROST LLP**
Amy Wilkins Hoffman (SBN 022762)
3200 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
E-Mail: amyh@frostllp.com
Phone: 480-466-7005

**THE CASAS LAW FIRM, PC**
John V. Golaszewski*
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
E-Mail: john@talentrights.law
Phone: 855-220-9626
*Pro hac vice application forthcoming

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Eva Pepaj, a California resident; Jessica Hinton aka Jessa Hinton, a California resident; and Lina Posada, a California resident,<br><br>Plaintiffs,<br><br>- against -<br><br>McSports, LLC dba The Frozen Cactus Sports Bar and Restaurant aka The Frozen Cactus, an Arizona limited liability company,<br><br>Defendant. | Case No. ____________________<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiffs Eva Pepaj, Jessica Hinton aka Jessa Hinton, and Lina Posada (collectively, "Plaintiffs") file this Complaint against McSports LLC, dba The Frozen Cactus Sports Bar and Restaurant aka The Frozen Cactus ("Defendant") and respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising images of Plaintiffs, each of whom are well-known professional models, to promote its night club, The Frozen Cactus Sports Bar and Restaurant aka The Frozen Cactus located at 5769 East Speedway Boulevard, Tucson, Arizona 87512 (hereinafter referred to as the "Night Club" or "The Frozen Cactus").

2. As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of the Common Law Right of Publicity; c) Unfair or Deceptive Trade Practices, A.R.S. Title 44, Chapter 9, et seq.; d) Common Law Unfair Competition; e) Defamation; f) Negligence and Respondeat Superior; g) Conversion; h) Unjust Enrichment; and i) Quantum Meruit.

3. In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

**JURISDICTION & VENUE**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5. This Court has jurisdiction over the state law claims asserted pursuant to 28 U.S.C. § 1367.

6. Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7. According to publicly available records, Defendant McSports, LLC, is a limited liability company formed under the laws of the State of Arizona, with its principal place of business located at 5769 East Speedway Boulevard, Tucson, Arizona, 87512.

Upon information and belief, McSports, LLC operates The Frozen Cactus Sports Bar and Restaurant, which is located at 5769 East Speedway Boulevard, Tucson, Arizona 87512.

8. Venue is proper in the United States District Court for the District of Arizona pursuant to 28 U.S.C. § 1391(b), because Defendant's principal place of business is located in Pima County, Arizona.

9. A significant portion of the alleged causes of action arose and accrued in Pima County, Arizona, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Pima County, Arizona.

## PARTIES

***Plaintiffs***

10. Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model and a resident of Los Angeles County, California.

11. Plaintiff Jessica Hinton ("Hinton") is a well-known professional model and a resident of Los Angeles County, California.

12. Plaintiff Lina Posada ("Posada") is a well-known professional model and a resident of San Bernardino County, California.

***Defendant***

13. Defendant McSports, LLC is a limited liability company formed under the laws of the state of Arizona and registered to conduct business in Arizona. During times relevant to this action, McSports, LLC operated The Frozen Cactus.

## FACTUAL ALLEGATIONS

14. Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

15. Plaintiffs' careers in the modeling industry place a high degree of value on

their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies and brands for which they model.

16. Each of the Plaintiffs' Images were misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendant.

17. In the case of each Plaintiff, this claim was false.

18. Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

19. No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of her Images, and Defendant's improper and illegal use of Plaintiffs' Images has caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

20. Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images it misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

21. Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004. Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in productions such as *The Hand Off*, INTERIOR. LEATHER BAR. (2013), *True Detective*, and THE ROMP (2011), and was a feature model in a national Diet Coke TV commercial campaign. She is also a content creator, and has over 1.3 million Instagram followers, and her YouTube channel, shared

with her husband, has over 2.28 million subscribers.[1]

22. Upon information and belief, Pepaj is depicted in the photo in Exhibit "A" to promote The Frozen Cactus on its Facebook and Instagram pages. This Image was intentionally altered to make it appear that Pepaj was either an employee working at The Frozen Cactus, that she endorsed The Frozen Cactus, or that she was otherwise associated or affiliated with The Frozen Cactus.

23. Pepaj has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

24. Hinton was discovered by a talent manager at age fourteen. By age sixteen she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at eighteen. In 2010, Hinton was the face of the Palms Hotel & Casino's ad campaign. She then pursued TV personality roles hosting for *Victory Poker* and *Top Rank Boxing,* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as July's Playmate of the Month becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for Milwaukee's Best Beer in conjunction with *Playboy* Enterprises. Hinton also attained spokesmodel roles for Affliction Clothing, Enzo, Milano Hair Products, REVIV Wellness Spa, and Protein World. She has ongoing modeling contracts with Rhonda Shear Shapewear, Leg Avenue, and Roma Costume, in addition to hosting a Los Angeles, CA television station KTLA. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

was named Creative Director for MAJR Media and was given part-ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 3.8 million followers on Facebook, Instagram and X (formerly known as Twitter).

25. Upon information and belief, Hinton is depicted in the photo in Exhibit “B” to promote The Frozen Cactus on its Facebook, Instagram and X pages. This Image was intentionally altered to make it appear that Hinton was either an employee working at The Frozen Cactus, that she endorsed The Frozen Cactus, or that she was otherwise associated or affiliated with The Frozen Cactus.

26. Hinton has never been employed at Defendant’s establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant’s unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

27. Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Bésame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swimwear, Ujeans, as well as many others. She currently has 102,000 Instagram followers, 4,100 YouTube subscribers, 17,300 Facebook followers, and over 5,200 Twitter followers.

28. Upon information and belief, Posada is depicted in the photo in Exhibit “C” to promote The Frozen Cactus on its Instagram page. This Image was intentionally altered to make it appear that Posada was either an employee working at The Frozen Cactus, that she endorsed The Frozen Cactus, or that she was otherwise associated or affiliated with The Frozen Cactus.

29. Posada has never been employed at Defendant’s establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant’s unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activity and Misappropriation***

30. Defendant operates (or operated, during the relevant time period,) a Night Club, where it engages (or was engaged) in the business of selling alcohol and food.

31. Defendant owns, operates, and controls The Frozen Cactus's social media accounts, including its Facebook, Twitter, and Instagram accounts.

32. Defendant used The Frozen Cactus's Facebook, Twitter, and Instagram accounts to promote The Frozen Cactus and to attract patrons.

33. Defendant did this for its own commercial and financial benefit.

34. Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at The Frozen Cactus, endorsed The Frozen Cactus, or was otherwise associated or affiliated with The Frozen Cactus.

35. Defendant used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed The Frozen Cactus to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

36. Defendant was well aware that Plaintiffs have never been affiliated with or employed by The Frozen Cactus, and at no point have Plaintiffs ever endorsed The Frozen Cactus or otherwise been affiliated or associated with The Frozen Cactus.

37. All of Defendant's activities, including its misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

38. Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

39. Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

40. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

41. The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and d) the length of time the rights to use the photos will be assigned, known in the modeling industry as the "term."

42. Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

43. Defendant was aware that, by using Plaintiffs' Images, it was violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed The Frozen Cactus.

44. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

45. In addition, Plaintiffs allege that the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with The Frozen Cactus.

46. At no point was any Plaintiff ever contacted by Defendant, or any representative of Defendant, to request the use of Plaintiffs' Images.

47. Defendant never obtained, either directly or indirectly, permission to use Plaintiffs' Images.

48. Defendant never paid any Plaintiff for its use of her Images on any promotional materials, including The Frozen Cactus's website, Twitter, Facebook, or Instagram accounts.

49. Defendant used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

50. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

51. The provisions of the Lanham Act, 15 U.S.C. §1125, et seq. apply to Defendant and protect Plaintiffs from the conduct described herein.

52. Defendant used Plaintiffs' Images, inter alia, in order to create the false impression with the public that Plaintiffs were affiliated, connected, or associated with Defendant or worked at as employees, sponsored, approved, or endorsed Defendant's goods, services or commercial activities.

53. This was done to promote and attract clientele to Defendant, and thereby generate revenue for Defendant. Thus, this was done in furtherance of Defendant's commercial benefit.

54. Despite the fact that Defendant was at all times aware that Plaintiffs were neither affiliated, connected or associated with Defendant, nor worked at, sponsored, or approved of Defendant's goods, services or commercial activities, Defendant nevertheless used Plaintiffs' Images in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant.

55. Defendant knew that its use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association and/or employment with Defendant's establishment.

56. Upon information and belief, Defendant's use of Plaintiffs' Images did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's establishment, and the goods and services provided by Defendant.

57. Due to Defendant's unauthorized use of Plaintiffs' Images in order to create a false endorsement prohibited by section 43 of the Lanham Act, Plaintiffs have been damaged in an amount to be determined at trial, but in all events, not less than seventy-five thousand dollars ($75,000), and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
## (Common Law Right of Publicity)

58. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59. As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in their Image, photo, persona and likeness.

60. This commercial interest was developed by each Plaintiffs through their investment of time, effort and money in their career, image, persona and likeness.

61. As set forth herein, Defendant used each Plaintiffs' Image and likeness for commercial purposes by using same in Defendant's advertising.

62. Defendant did so without the consent of any Plaintiff, written or otherwise.

63. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their Image and likeness and through the filing of this complaint.

64. Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' Image and likeness was altered so as to reach a new audience and/or promote a different product.

65. Defendant was at all relevant times aware that it never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Defendant's establishment.

66. At no point did Defendant ever compensate Plaintiffs for its use of their Images.

67. No applicable privilege or authorization exists for Defendant's use of Plaintiffs' Images.

68. In addition, because Defendant's actions in misappropriating Plaintiffs' Images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(Unfair or Deceptive Trade Practices, A.R.S. Title 44, Chapter 9, et seq.)**

69. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70. Defendant operated Defendant's website and social media accounts in order to promote the establishment, to attract clientele thereto, and to thereby generate revenue for Defendant.

71. As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Arizona.

72. Defendant published Plaintiffs' Images on Defendant's website and social media accounts in order to create the false impression that Plaintiffs were either employees working at the Night Club, endorsed the Night Club, or were otherwise affiliated, associated, or connected with the Night Club.

73. As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant's Night Club.

74. Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' Image and likeness on various occasions, via different mediums, after the initial date of the posting of their Image and likeness and through the filing of this complaint.

75. Defendant's advertising practices offend the public policy of Arizona insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

76. Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for its own commercial benefit by implying that Plaintiffs are affiliated, endorse, or are associated with the Night Club.

77. Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employees or entertainers at, endorse, or are otherwise affiliated with, its Night Club.

78. There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

79. As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, Plaintiffs were harmed.

80. As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## **FOURTH CAUSE OF ACTION**
## **(Common Law Unfair Competition)**

81. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

82. Defendant operated Defendant's website and social media accounts in order to promote the Night Club, to attract clientele thereto, and to thereby generate revenue for Defendant.

83. As such, Defendant's operation of the website and social media accounts, and its publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Arizona.

84. Defendant published Plaintiffs' Images on Defendant's website and social media accounts in order to create the false impression that Plaintiffs were either employees working at the Night Club, endorsed the Night Club, or were otherwise affiliated, associated, or connected with Defendant's Night Club.

85. As such, Defendant's intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Defendant's Night Club.

86. Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under Arizona law.

87. Defendant's advertising practices offend the public policy of Arizona insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendant's commercial benefit.

88. Defendant's advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for its own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with its Night Club.

89. Defendant's advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are employees or entertainers at, endorse, or are otherwise affiliated with, its Night Club.

90. There are no benefits to Defendant's advertising practices as set forth hereon except a benefit to Defendant's own commercial interests.

91. As a result of Defendant's unauthorized and misleading publication of Plaintiffs' Images on its Night Club website and social media accounts, Plaintiffs were harmed.

92. As a result of Defendant's unauthorized and misleading use of Plaintiffs' Images, Plaintiffs has suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## FIFTH CAUSE OF ACTION
**(Defamation)**

93. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94. As detailed throughout this Complaint, Defendant has published altered Images of Plaintiffs in order to promote its Night Club to the general public and potential clientele.

95. Defendant's publication of said Images constitutes a representation that Plaintiffs were either employed by Defendant, that they endorsed its Night Club, or that they had some affiliation with its Night Club.

96. None of these representations were true. In publishing Plaintiffs' altered Images, it was Defendant's intention to create a false impression to the general public that Plaintiffs were employees working at its Night Club or endorsed its Night Club.

97. Defendant was at least negligent in publishing Plaintiffs' Images because it knew, or should have known, that Plaintiffs were not employed by its Night Club, had no affiliation with its Night Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

98. In the alternative, Defendant published the Images of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by its Night Club, had no affiliation with its Night Club, had not consented to the use of their Images, and had not been compensated for the use of their Images.

99. Despite Defendant's knowledge and awareness of these facts, it nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for itself.

100. Defendant's publication of Plaintiffs' Images constitutes defamation under Arizona law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing the Night Club - which would subject each Plaintiffs to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

101. Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Arizona law because said publication would tend to injure each Plaintiff in their trade, business, and profession as professional models.

102. Any company or brand that sought to hire any Plaintiff as a company or brand representative would be less likely to do so upon learning that they were associated with Defendant's Night Club, an inference which Defendant's publication of the Images support.

103. Defendant's publication of Plaintiffs' Images likewise constitutes defamation per se under Arizona law because said publication falsely portrays each of the Plaintiffs as an employee, entertainer, or otherwise associated with Defendant and in doing so imputes unchastity to them.

104. Defendant's publication of Plaintiffs' Images caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
## (Negligence and Respondeat Superior)

105. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

106. Plaintiffs are further informed and believe and hereon allege that Defendant maintained or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

107. Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

108. Defendant owed a duty of care to Plaintiffs to ensure that its advertising and promotional materials and practices did not infringe on their property and publicity rights.

109. Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in its advertising practices.

110. Defendant breached its duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

111. Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Arizona law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

112. Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

113. As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

**SEVENTH CAUSE OF ACTION**
**(Conversion)**

114. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

115. Each Plaintiff is, and at all relevant times was, the exclusive owner of all right, title and interest in her Image, and has property interests thereon.

116. By the conduct detailed above, Defendant converted Plaintiffs' property rights in their Images for its own use and financial gain.

117. As a result of Defendant's unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Unjust Enrichment)**

118. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

119. As set forth in detail above, Defendant published Plaintiffs' Images in order to promote Defendant's Night Club to the general public and potential clientele.

120. Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs are either employees or entertainers working at the Night Club or otherwise endorsed the same.

121. Defendant's purpose in publishing Plaintiffs' Images was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

122. Upon information and belief, Defendant did in fact benefit commercially due to its unauthorized use of Plaintiffs' Images.

123. Defendant has been enriched by its unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendant in attracting clientele to its Night Club.

124. Plaintiffs have not been compensated for Defendant's commercial exploitation of their Images, and thus any financial benefit which Defendant received due to said exploitation is unjust.

125. As such, Plaintiffs have been damaged in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Quantum Meruit)**

126. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

127. Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

128. Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

129. Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work for, endorse, or are otherwise affiliated with its Night Club, Defendant has not compensated Plaintiffs.

130. Plaintiffs are therefore entitled to reasonable compensation for Defendant's unauthorized use of their Images.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote the Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117 ;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 20th day of May, 2026.

/s/ Amy Wilkins Hoffman
Amy Wilkins Hoffman (SBN 022762)
**FROST LLP**
3200 N. Central Avenue, Suite 1200
Phoenix, AZ 85012
E-Mail: amyh@frostllp.com
Phone: 480-466-7005
**THE CASAS LAW FIRM, P.C.**
John V. Golaszewski*
New York Bar No. 4121091
*Pro Hac Vice Application Forthcoming

1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Telephone: 855-267-4457
Fax: 855-220-9626
E-Mail: john@talentrights.law